Argued and submitted September 24, 1996, reversed and remanded June 18, 1997

OREGON OCCUPATIONAL SAFETY
& HEALTH DIVISION,
*Petitioner,*

*v.*

TOM O'BRIEN CONSTRUCTION CO., INC.,
*Respondent.*

(SH-93278; CA A89391)

941 P2d 550

Jas. Adams, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Elliott C. Cummins argued the cause for respondent. With him on the brief was Cummins, Goodman, Fish & Peterson, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Petitioner, Oregon Occupational Safety and Health Division (OR-OSHA),[1] seeks review of an order of an administrative law judge (ALJ) that dismissed a citation charging respondent, Tom O'Brien Construction Company (employer), with violating a fall protection standard. This case raises issues of first impression under Oregon law—specifically, issues that arise when an employer is charged with a "serious violation" of the Oregon Safe Employment Act (OSEA),[2] alleged to have been intentionally committed by a supervisory employee. We reverse and remand.

When OR-OSHA cites an employer for a violation of the OSEA, it classifies the violation using one or more categories. *See* OAR 437-01-015(53). The elements of any violation are determined by the type of violation with which OR-OSHA chooses to cite an employer. *See* OAR 437-01-015(53) (defining types of violations and citation options). In this case, OR-OSHA charged employer with a "serious" violation, which is defined as

> "[a] violation in which there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use in a place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*" OAR 437-01-015(53)(a)(A) (emphasis supplied).

With regard to the emphasized portion of the rule, OR-OSHA maintains that, if a supervisor, as opposed to a nonsupervisor, violates a safety standard, then the supervisor's knowledge of the violation should be imputed to the employer in all circumstances and constitutes *prima facie* evidence that the employer had actual or constructive knowledge of the violation. Employer responds that it is incorrect to impute a supervisor's knowledge to the employer when the supervisor

---

[1] Petitioner, respondent and the Workers' Compensation Board each refer to Oregon Occupational Safety and Health Division as "OR-OSHA," as do we.

[2] The OSEA is found at ORS 654.001 to 654.295, 654.750 to 654.780 and 654.991.

intentionally violates a safety standard in contravention of the employer's policies. Employer further argues that an employer should not be held liable for a serious violation if it can show that it generally exercised diligence to discover and prevent violations by its employees and that a specific violation by a supervisor was not foreseeable or preventable on the part of the employer. Such a showing, referred to as the "rogue supervisor" defense, tends to support the inference that the employer did not have any reason to know of the violation, *i.e.*, that it had no constructive knowledge of the violation. In *Mountain States Tel. & Tel. v. Occupational Safety*, 623 F2d 155, 157 n 3 (10th Cir 1980), the Tenth Circuit described the rationale underlying the rogue supervisor defense as follows:

> "A showing by the employer that it has an adequate and effectively enforced safety program, gives rise to the inference that the employer's reliance on employees to comply with applicable safety rules is justifiable; violations then are not foreseeable or preventable. On the other hand, common sense and experience suggest that an employer who has not implemented an effective safety program should know employees are likely to violate rules designed to guard against foreseeable risks attendant to that employer's business."

OR-OSHA maintains that, unlike federal law, Oregon does not recognize the so-called "rogue supervisor defense." Employer responds that, if, as OR-OSHA argues, a supervisor's knowledge is always imputed to the employer, and there is no rogue supervisor defense in Oregon, then the fact that a supervisor committed a violation would be conclusive evidence that the employer knew about the violation because the supervisor's knowledge of the violation would always be attributed to the employer, and the employer would be precluded from offering evidence to show that it exercised diligence and, in the light of that diligence, had no reason to know of the violation. In sum, employer maintains that the relevant rules should not be interpreted to create an irrebuttable presumption that an employer knows about every violation committed by a supervisor.

We turn to the facts of this case. On May 5, 1993, Safety Compliance Officer Lankford observed employer's

construction site in Hermiston, Oregon. From his vantage point on the street, Lankford observed four of employer's workers installing sheet metal roofing 31 feet above the ground. The workers were wearing safety harnesses and lanyards, but the lanyards were not attached to anything while the workers were walking on steel beams and within a foot or two of leading edges. The four workers were the lead man, Chris Autry, and three employees under his supervision. Autry's supervisor—the crew foreman, Juan Villalobos—was not at the site at the time of the violation. In Villalobos' absence, Autry was the supervisor of the crew. Based on his observations, Lankford issued a citation to employer charging a serious violation of the fall protection standard set forth in OAR 437-03-040(1).[3]

Employer appealed the citation, and a hearing was held before an ALJ. ORS 654.078(1); ORS 654.290.[4] At the hearing, OR-OSHA argued that, because Autry was a supervisor, his knowledge of the violation should be imputed to employer, thereby establishing *prima facie* evidence of employer knowledge. Employer conceded that its four employees were installing sheet metal roofing at the 31-foot level without using fall protection. Employer argued that the citation, nonetheless, must be dismissed because employer did not know, and with the exercise of reasonable diligence could not have known, of the violation. Employer offered evidence in support of a finding that employer had exercised reasonable diligence to assure compliance with safety standards and to discover employee noncompliance and invited the inference that any violation was due solely to the unauthorized acts of Autry. OR-OSHA objected to admission of

---

[3] At all times relevant, OAR 437-03-040(1) provided:

"All employees shall be protected from fall hazards when working on unguarded surfaces more than 10 feet above a lower level or at any height above dangerous equipment, * * *."

[4] The Director of the Department of Consumer and Business Services and the Workers' Compensation Board are vested with authority to promulgate rules necessary to effectuate the OSEA. ORS 654.025. The Workers' Compensation Board employs ALJs to preside over hearings in contested cases under the OSEA, and the order of an ALJ in such a contested case is deemed to be the final order of the Board. ORS 654.290(2)(a), (b).

that evidence, arguing that employer was attempting impermissibly to establish a rogue supervisor defense without giving prior notice that it intended to rely on that defense.

The ALJ allowed employer's evidence into the record and denied OR-OSHA's related request for a continuance. The ALJ found that

> "[t]he safety program of Tom O'Brien Construction[,] Inc. required all of its workers to wear safety harnesses and hook up their lanyards at any time they went above the ground level at any distance. On May 5, 1993, the acting foreman at the work site, Chris Autry, deliberately instructed the workers not to hook up to the safety cable so that they could work faster and thereby hopefully help promote Autry's elevation to a permanent foreman position with this employer. Autry's actions were done without the knowledge of his supervisor or the employer and [were] contrary to the employer's safety rules. Subsequently, the employer disciplined Autry for his failure to follow the safety rules and for failing to have all of the workers use their fall hazard equipment."

Based upon those findings, the ALJ concluded that

> "the intentional acts of Mr. Autry * * * were intentionally done for his own personal benefit and in contravention of the employer's safety rules * * *. I further conclude that Mr. Autry's action and knowledge should not be imputed to this employer."

The ALJ dismissed the citation, concluding that OR-OSHA had failed to establish that employer knew, or with reasonable diligence could have known, of the violation.

■ OR-OSHA's first assignment of error concerns rulings by the ALJ that OR-OSHA asserts impaired the fairness of the proceeding. *See* ORS 183.482(7). OR-OSHA argues that the ALJ erred by failing to exclude employer's rogue supervisor evidence because it was raised for the first time at the hearing. OR-OSHA asserts that, if it exists at all, the rogue supervisor evidence constitutes an affirmative defense that must be specifically pled. The rules of practice and procedure for contested cases under the OSEA are set forth in OAR chapter 438, division 85. Those rules provide that, in

such proceedings, the citation is considered to be the "complaint," and the employer's appeal serves as the "answer." OAR 438-85-516(1); OAR 438-85-506. The employer's answer must state the grounds upon which the appeal is based, but it need not be in any specific form. OAR 438-85-111(1)(d).

In this case, employer's answer was a general denial, effectively repudiating every element of the violation. Despite the absence of rules requiring affirmative pleading of "defenses," OR-OSHA asserts that the general denial was insufficient to give it notice that employer intended to rely on the rogue supervisor evidence, and consequently, the fairness of the proceedings was impaired by the admission of that evidence.

■ We have previously held, and OR-OSHA concedes, that, for an employer to be liable for a serious violation, OR-OSHA must prove that employer knew, or with the exercise of reasonable diligence could have known, of the violation. *Accident Prevention Div. v. Roseburg Forest Prod.*, 106 Or App 69, 72-73, 806 P2d 172 (1991); *Skirvin v. Accident Prevention Division*, 32 Or App 109, 112-15, 573 P2d 747, *rev den* 282 Or 385 (1978). *See also* OAR 437-01-015(53)(a)(A) (defining "serious violation"); OAR 438-85-820(1)(a) (OR-OSHA has burden of proving a denied violation). Because it is an element of the violation, OR-OSHA bears the burden of persuasion on employer knowledge. *See Skirvin*, 32 Or App at 112-15 (reversible error to shift burden of persuasion to employer to show that it *lacked* knowledge of the violation). Thus, employer knowledge is a *prima facie* element of a serious violation, and OR-OSHA retains the burden of persuasion on that issue.

■ Rogue supervisor evidence tends to show that an employer had no reason to know of a supervisor's violation, *i.e.*, that it had no constructive knowledge of the violation. Although OR-OSHA characterizes the rogue supervisor defense as an affirmative defense, in substance it is not, because it negates the knowledge element of a serious violation. Thus, the ALJ did not err in admitting employer's evidence in support of a rogue supervisor defense even though employer did not provide notice that it intended to rely on that defense. *Cf. MacNab v. Fireman's Fund Ins. Co.*, 243 Or

267, 272-73, 413 P2d 413 (1966) (when agent commits an unauthorized act, principal is not required to plead such defense as an affirmative defense and a general denial will suffice). It therefore follows that the ALJ did not err in denying OR-OSHA's request for a continuance to address employer's rogue supervisor evidence.[5]

■     OR-OSHA next argues that the ALJ erred in sustaining employer's objection to testimony about employer's response to a previous citation that had been issued to employer for an alleged violation of the fall protection standard on March 24, 1993.[6] On that date, Lankford observed Villalobos and Autry working without fall protection on a roofing project, at a height greater than 10 feet above the ground.[7] Villalobos was the supervisor. Based on his observations on March 24, 1993, Lankford issued a citation to employer for allegedly violating the fall protection standard. At the hearing in the present case, concerning the May 5, 1993, citation, Villalobos testified that he was not reprimanded by employer for the March 24, 1993, citation. OR-OSHA then asked about events that occurred after the March 24, 1993, inspection, and employer objected on the ground that such evidence was irrelevant to the May 5 citation. The ALJ sustained employer's objection.

---

[5] OAR 438-85-720 provides that a hearing shall not be continued except by order of the ALJ, "upon a finding of extraordinary circumstances beyond the control of the party" requesting it, which were not present in this case. Furthermore, if OR-OSHA, faced with a general denial, desires clarification of issues of fact or law disputed by an employer, it may move for an order requiring the parties to

"(1) Jointly prepare and submit a written statement setting forth the relevant facts about which there is no dispute, each party's contentions of fact, and the issues of fact and law to be decided by the referee.

"(2) Exchange information or attend a pre-hearing conference with the referee for the purpose of simplifying and clarifying the issues or expediting the process."

OAR 438-85-725.

[6] The citation in this case is the second in a series of three fall protection citations that were issued to employer for alleged violations occurring between March 24, 1993, and May 28, 1993.

[7] Employer argues that, on review of the May 5, 1993, citation, we may not consider any part of the record for the March 24, 1993, citation. However, employer conceded below that the portion of the transcript that contained testimony about the March 24, 1993, inspection is part of the record for the May 5, 1993, citation.

OR-OSHA argued below, and argues on review, that that evidence is relevant to whether employer had reason to know of the May 5 violation. We agree. The earlier citation put employer on notice that its supervisors and employees may have been violating the fall protection standard. Thus, given evidence offered by employer concerning its lack of knowledge of Autry's unsafe practices and its efforts to promote job site discipline, evidence of measures taken by employer in response to the earlier citation is probative of whether employer subsequently exercised reasonable diligence to enforce safety standards and discover violations. In other words, employer's response to the earlier fall protection citation is relevant to whether employer can be deemed to have constructive knowledge of the May 5 violation.

Employer argues that matter pertaining to the earlier citation is not relevant to employer's knowledge of the May 5 violation because the March 24 citation eventually was dismissed.[8] However, the March 24 citation was not dismissed until after May 5 and still was pending at the time of the hearing on the May 5 violation. Moreover, the pending citation put employer on notice that its employees and supervisors may have been violating the fall protection standard, regardless of the fact that the citation eventually was dismissed. *Accord Western Waterproofing Co., Inc. v. Marshall*, 576 F2d 139, 144-45 (8th Cir), *cert den* 439 US 965 (1978) (previous citation, though vacated, and conferences in connection therewith were relevant to show employer's knowledge of subsequent violation). The ALJ erred in sustaining employer's objection to testimony about employer's response to the earlier citation.[9]

---

[8] The ALJ dismissed the March 24 citation concluding that, on the basis of Villalobos' and other employees' testimony, and given Lankford's vantage point and length of observation, OR-OSHA had failed to prove that Autry and Villalobos were working within less than six feet of leading edges without fall protection.

[9] OR-OSHA also assigns error to the ALJ's denial of its motion to reopen the record to include citations issued to employer by the State of Washington for, among other things, serious repeat violations of fall protection standards and failure to "develop and implement a written fall protection work plan." The ALJ denied OR-OSHA's motion to reopen the record on the grounds that OR-OSHA offered no explanation of why the evidence was neither disclosed to employer nor timely offered, that the copies of citations were not certified by the State of Washington and that the "matters are not subject to Oregon subpoena power and therefore cannot be compelled to be subjected to cross-examination." We note that the last two

■     We may not reverse on the basis of an erroneous evidentiary ruling unless a party's rights were substantially prejudiced by the ruling. ORS 183.450. This is sometimes referred to as the "harmless error rule." The error cannot be said to be harmless here, given the ALJ's findings:

> "[T]he credible *testimony of Mr. Ripka, which was uncontradicted, was that this employer had a safety program in place and in use on and before May 5, 1993*, which met or exceeded the standards required by the OR-OSHA rules. Further, Mr. Ripka testified that the safety program was *effectively implemented and enforced* by this employer. I find the testimony of Ripka to be probative and persuasive. I conclude that the intentional acts of Mr. Autry * * * were intentionally done for his own personal benefit and in contravention of the employer's safety rules * * *." (Emphasis supplied.)

Ripka, employer's expert witness, had testified about employer's safety program. Denying OR-OSHA the ability to rebut Ripka's testimony with evidence concerning employer's response to the March 24 violation substantially impaired OR-OSHA's right to offer evidence that employer failed to respond effectively to violations identical to those alleged in the present case and involving the same supervisors, which would support the inference that employer had constructive knowledge of the May 5 violation. *See* OAR 438-85-825 (OR-OSHA has the right to rebut evidence against it). Because the ALJ dismissed the citation on the ground that OR-OSHA failed to establish employer knowledge, OR-OSHA was substantially prejudiced by the erroneous evidentiary ruling. We therefore reverse and remand for reconsideration.

In its second assignment of error, OR-OSHA takes issue with legal standards applied by the ALJ, which may not

---

grounds listed by the ALJ do not render the evidence inadmissible. OAR 438-85-840(1) (In a hearing to challenge a citation under the OSEA, "[e]vidence that reasonably prudent persons commonly rely upon in the conduct of their serious affairs shall be admissible."). Although the Washington citations for similar violations are relevant to employer knowledge of the present violation, we review the ALJ's decision not to reopen the record for abuse of discretion. OAR 438-85-805. Under the circumstances, when the evidence was offered without explanation as to why it was not timely offered, the ALJ's decision not to reopen the record to admit the evidence of the Washington citations was not an abuse of discretion.

.

arise on remand. We do not address those arguments given our disposition of the first assignment of error.

Reversed and remanded.